**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANDRO ROSADO-RODRIGUEZ,

      Petitioner,

v.                                        Case No. 8:15-cv-1260-T-33AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Andro Rosado-Rodriguez, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and a memorandum of law (Doc. 2).  He challenges his convictions entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, in 2010. Respondent filed a response (Doc. 13), which raises no challenge to the timeliness of the petition.  Rosado-Rodriguez filed a reply (Doc. 15).  Upon review, the petition must be denied.

### PROCEDURAL HISTORY

Rosado-Rodriguez was convicted of robbery with a deadly weapon (count one); aggravated battery with a deadly weapon (count two); aggravated assault with a deadly weapon (counts three, four, and five); fleeing to elude (count seven); reckless driving (count eight); driving while license canceled, suspended, or revoked (count nine); and possession

of drug paraphernalia (count ten).  (Doc. 14, Ex. 1, pp. 120-22.)[1]  He was sentenced to life in prison on count one, fifteen years in prison on count two, and five years in prison on counts three, four, five, and seven.  (Id., pp. 127-44.)  He received a sentence of credit for time served on counts eight, nine, and ten.  (Id., p. 127.)  The state appellate court *per curiam* affirmed his convictions and sentences.  (Doc. 14, Ex. 4.)

Rosado-Rodriguez filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Doc. 14, Ex. 6, pp. 38-77.)  The state court summarily denied two claims and conducted an evidentiary hearing on the remaining claims.  (Id., pp. 6-16, 104-81.)  Following the evidentiary hearing, the state court entered a final order denying postconviction relief.  (Id., pp. 85-100.)  The state appellate court *per curiam* affirmed the order of denial.  (Doc. 14, Ex. 9.)  Rosado-Rodriguez's motion for rehearing, clarification, and issuance of written opinion was denied.  (Doc. 14, Exs. 10, 11.)

## FACTS[2]

On May 4, 2009, while Rosado-Rodriguez was inside a Walmart store, asset protection officer Steve Garberg observed him put several video games down the front of his pants. Rosado-Rodriguez did not pay for the video games before exiting the store. Near the store's front entrance, Garberg, asset protection officer Jonathan Barger, and assistant manager John Bailey confronted Rosado-Rodriguez.

A resulting physical struggle involved all four men.  Barger placed handcuffs on one of Rosado-Rodriguez's wrists but could not secure them on his other wrist.  All three

---

[1] Rosado-Rodriguez was acquitted of count six, aggravated assault on a law enforcement officer. (Doc. 14, Ex. 1, p. 121.)

[2] This factual summary is derived from the trial transcript and the briefs filed on direct appeal.

Walmart employees observed Rosado-Rodriguez holding a knife.   Bailey and Barger recalled seeing Rosado-Rodriguez swing or slash the knife.   The employees backed away from Rosado-Rodriguez.   They saw him move through the parking lot, remove the license plate from the back of a car, and leave in the car.   Following the incident, Bailey realized that his hand was cut.

After law enforcement received calls from Walmart, Deputy Thomas Kelley began following a car matching the description of the suspect's vehicle.   He followed the car as it drove through a red light and proceeded onto Interstate 75.   Kelley described the car as weaving in and out of traffic and approaching speeds of 100 miles per hour.   The car stopped when it traveled into a dead-end, barricaded area on Interstate 4.   Rosado-Rodriguez fled the car on foot and was later apprehended.   Law enforcement found a knife on the car's driver's seat and a Grand Theft Auto IV video game and glass pipe on the floorboard.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).   Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

>In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The

phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In *per curiam* decisions without written opinions, the state appellate court affirmed Rosado-Rodriguez's convictions and sentences, and affirmed the denial of his postconviction motion. The state appellate court's *per curiam* decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state

court. *Pinholster,* 563 U.S. at 180-81. Rosado-Rodriguez bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir.

1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."   *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.   28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."   *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."   *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with

error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## DISCUSSION

### Ground One

In Ground One, Rosado-Rodriguez presents six subclaims alleging ineffective assistance of trial counsel. Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).   Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.   Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."   *Id.* at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*   Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id.*

Rosado-Rodriguez must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."   *Id.* at 691-92.   To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."   *Id.* at 690-91.   A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

The test has nothing to do with what the best lawyers would have done.   Nor

is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

**Subclaim A**

Rosado-Rodriguez claims that counsel was ineffective for failing to investigate and call at trial Michael Rodriguez.  Rosado-Rodriguez presented a sworn affidavit of Michael

Rodriguez in support of this claim during postconviction proceedings.  It provides:

> I, Michael Rodriguez, state under the penalty of perjury that the following is true:
>
> On Sunday, May 3, 2009, and the early morning on May 4, 2009, Andro Rosado Rodriguez sat at my residence and played my XBOX Grand Theft Auto IV video game.  As Rosado was leaving my residence on the morning of the 4th, he asked to borrow the game.  I threw the game on the front seat of his vehicle as he was leaving to go to Wal-Mart.  I learned the next day he had been arrested.
>
> I paid $40.00 for that video game so I called the Sheriff's Office and asked about my video game.  I was told it was probably being used as evidence and to either call the State Attorney's Office or Rosado's lawyer. I called the Public Defender's Office about a week later.  I finally got to speak with Rosado's attorney and explained that the video game was mine, Rosado had the game on loan, that we had played the game at my residence the morning of his arrest, and that I wanted my video game returned to me.
>
> The attorney told me that the State Attorney's office is charging Rosado with stealing the game from Wal-Mart.  I explained that it could not have been stolen because I loaned it to him after playing it with him.  He said he may need me as a witness and took my name and phone number.  I told him I would gladly testify but no one ever contacted me to do so.

(Doc. 14, Ex. 6, p. 84.)  At the postconviction evidentiary hearing conducted on his claim,

Rosado-Rodriguez  testified that he told his attorneys Michael Rodriguez was willing to

testify.  (Id., p. 135).  He stated that his attorneys said Michael Rodriguez's testimony was

unnecessary because their investigator went to Walmart and saw that the video game in

question, Grand Theft Auto IV, was kept in a locked area not accessible to the public.  (Id.,

p. 135.)

During cross-examination, the State referred to trial evidence reflecting that the

video game found in Rosado-Rodriguez's car was in its packaging.  (Id., pp. 145-46.)[3]

---

[3] Deputy Vincent Porter testified about the items found in Rosado-Rodriguez's car, including the video game:

> Q    Deputy Porter, as far as you can recall the Grand Theft Auto video game was that in sealed wrapping?  Was that still wrapped up?

When asked whether "in order to get to a video game, you normally have to break the shrink-wrap on the packaging," Rosado-Rodriguez responded, "If you want to open it, yes." (Id., p. 146.)  Michael Rodriguez did not testify at the evidentiary hearing.[4]

Attorney Andres Sanchez testified that Michael Rodriguez told the investigator the game belonged to Rosado-Rodriguez, who had purchased it a year prior.  (Id., p. 153.) Sanchez believed that calling Michael Rodriguez would have "created a conflict in terms of what the testimony would be; what he was telling us and what Mr. Rosado was telling us."  (Id., pp. 153-54.)  Similarly, attorney Shawn Goforth testified that Michael Rodriguez told the investigator he could verify that Rosado-Rodriguez bought the game nearly a year earlier at a location other than Walmart.  (Id., p. 162.) Thus, he testified, the contents of Michael Rodriguez's affidavit were inconsistent with his statements to the investigator before trial.  (Id., p. 163.)

Additionally, Goforth testified, Rosado-Rodriguez told him that Michael Rodriguez was a relative who would "say what we need him to say." (Id., p. 163.)  Goforth testified that, as an officer of the court, he could not call Michael Rodriguez given Rosado-Rodriguez's representation that he would testify in this manner.  (Id., pp. 163-64.)

---

A       Yes, it was.

Q       It was?

A       Yes.

(Doc. 14, Ex. 1c, p. 333.)

[4] In his reply, Rosado-Rodriguez claims that postconviction counsel was ineffective for not calling Michael Rodriguez to testify at the evidentiary hearing.  Rosado-Rodriguez is prohibited from raising new claims in his reply.  *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) )("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (citation omitted).

The state court denied this claim after the evidentiary hearing.   Upon reviewing Rosado-Rodriguez's claim and summarizing the evidentiary hearing testimony, the court concluded:

> The Court finds the testimony of Defendant's former counsel to be credible.   The Court notes "defense counsel must refuse to aid [the] defendant in giving perjured testimony and also refuse to present testimony of [a] witness that he knows is fabricated."   *Sanborn v. State*, 474 So.2d 309 (Fla. 3d DCA 1985).   As such, the Court finds counsel was not deficient in not calling Michael Rodriguez to testify when he had reason to believe the testimony would be fabricated.   Further, the Court finds counsel's decision to not call Michael Rodriguez because his testimony would not aid the case was a reasonable trial strategy and thus the Court finds counsel was not deficient.   *See Everett* [*v. State*], 54 So.3d [464,] 474 [(Fla. 2010)].   **As such, the Court finds no relief is warranted on claim one.**

(Doc. 14, Ex. 6, p. 90) (emphasis in original).

A federal habeas court must defer to a state court's findings of fact.   28 U.S.C. § 2254(e)(1).   Rosado-Rodriguez does not overcome the presumption of correctness afforded to the state court's determination that counsels' testimony was credible.   *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].");   *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).").   *See also Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) ("A certain amount of deference is always given to a trial court's credibility determinations.   That the case is before us on habeas review heightens that deference.") (citations omitted).

Whether to call a witness is a strategic decision by counsel. *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call

them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."). In analyzing the claim under *Strickland*, the focus is on whether counsels' strategic decision not call Michael Rodriguez was a reasonable one. *Putman v. Head*, 268 F.3d 1223 (11th Cir. 2001) ("Moreover, '[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)); *Minton v. Sec'y, DOC*, 271 Fed. App'x 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

The attorneys' testimony shows that they investigated Michael Rodriguez before trial. Their testimony further reflects that Michael Rodriguez's pre-trial statements to the investigator were inconsistent with the affidavit offered in support of Rosado-Rodriguez's ineffective assistance of counsel claim. Moreover, as Rosado-Rodriguez's evidentiary hearing testimony suggests, Michael Rodriguez's proposed testimony would not have accounted for the fact that the video game in the car was wrapped in packaging. The State could have attacked Michael Rodriguez's version of events by arguing that he and Rosado-Rodriguez could not have already played that particular game. Accordingly, there is support in the record for the state court's conclusion that not calling Michael Rodriguez was a reasonable strategic choice because his testimony would not be helpful.

Furthermore, Goforth's testimony reflects his knowledge that Rosado-Rodriguez

believed Michael Rodriguez would testify to what Rosado-Rodriguez "need[ed] him to say." As the state court found, counsel cannot be deemed ineffective for failing to call a witness who he believes will offer false testimony.  *See Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1349 n.14 (11th Cir. 2009) ("[A]ttorneys are not required to violate ethical standards to serve their client's ends.  A defendant has no constitutional right to have his attorney present evidence that the attorney believes is false.") (citing *Nix v. Whiteside*, 475 U.S. 157, 171 (1986) and *Davis v. Singletary*, 119 F.3d 1471, 1475 (11th Cir. 1997)).

Rosado-Rodriguez does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  He is not entitled to relief on Ground One, Subclaim A.

## Subclaim B

In charging Rosado-Rodriguez with aggravated battery with a deadly weapon, the State alleged that he cut Bailey with a knife during the altercation at the front of the store. Bailey testified that he did not know what instrument was used, but that the cut was a thin line consistent with having been caused by a knife. (Doc. 14, Ex. 1b, pp. 188, 189-90.) Rosado-Rodriguez claims counsel was ineffective for failing to investigate DNA evidence on the knife to show that knife was not used during this incident.

The state court conducted an evidentiary hearing on Rosado-Rodriguez's claim of ineffective assistance of counsel.  Rosado-Rodriguez testified that he did not have a knife during the incident and suggested that a "shiny" object seen on the surveillance video was the pair of handcuffs. (Doc. 14, Ex. 6, p. 136.)[5]  Rosado-Rodriguez testified that he asked

---

[5] Walmart surveillance videos were shown at trial.  (Doc. 14, Ex. 1b, pp. 192-201.)

counsel for DNA testing, but that counsel indicated the cost was too high.  (Id., p. 137.) Rosado-Rodriguez denied that he decided not to proceed with DNA testing after Goforth conferred with another attorney in the Public Defender's Office who advised against testing because it could potentially provide more evidence for the State.  (Id., p. 147.)

Goforth testified that Rosado-Rodriguez told him he wanted DNA testing performed on the knife and handcuffs.  (Id., p. 164.)[6]  Goforth spoke to an experienced attorney in his office who recommended against performing the testing for strategic reasons.  (Id., p. 165.) Goforth testified that upon informing Rosado-Rodriguez of this conversation and recommendation, Rosado-Rodriguez "quickly retracted his earlier decision to test the knife for DNA evidence."  (Id., pp. 165-66.)

The state court denied this claim after the evidentiary hearing.  It stated:

> In claim two, Defendant alleges counsel was ineffective by failing to investigate and develop DNA evidence for his defense. Defendant was charged and convicted of aggravated battery with a deadly weapon and three counts of aggravated assault with a deadly weapon. Defendant was accused of pulling out a knife and cutting a Wal-Mart security officer as he tried to flee the store.  Defendant alleges the cut sustained by the victim was caused by the handcuff placed on his wrist by another victim during the struggle and not from the knife.  Defendant alleges counsel should have tested the knife and the handcuff for DNA to show the knife was not used as a weapon. Defendant alleges he was prejudiced because had counsel tested for DNA and discovered the handcuff not the knife had DNA from the victim and thus caused the injury, he would have been acquitted of the charge [of] aggravated battery with a deadly weapon. [FN]
>
> > [FN] The Court finds Defendant's assertion is misplaced, as it is the manner in which an object is used that determines whether it is a deadly weapon.  *See Robinson v. State*, 547 So.2d 321, 323 (Fla. 4th DCA 1989) ("An object can also be construed as a deadly weapon because of its use or

---

[6] Sanchez testified that his notes indicated Goforth addressed this matter with Rosado-Rodriguez, and that Sanchez did not recall discussing it further.  (Doc. 14, Ex. 6, p. 155.)

> threatened use during the alleged crime."). Whether an object constitutes a deadly weapon is a question of fact to be determined by the jury.  *See Michaud v. State*, 47 So.3d 374 (Fla. 5th DCA 2010) (finding whether a wrench was a deadly weapon was a question of fact properly submitted to the jury to determine).  Thus, Defendant would not have been found not guilty because the object was handcuffs not a knife because the jury was still required to determine whether such an object constituted a deadly weapon.

(Doc. 14, Ex. 6, pp. 90-91.)  The state court addressed the evidentiary hearing testimony, and concluded:

> The Court finds Goforth and Sanchez' testimony at the evidentiary hearing to be credible.  The Court finds counsel was not deficient as counsel's decision[s] to not test the knife and handcuffs for DNA, which counsel discussed with Defendant, are reasonable and strategic decisions.  *See Johnson* [*v. State*], 769 So.2d [990,] 1001 [(Fla. 2000)].  **As such, the Court finds no relief is warranted on claim two.**

(Id., p. 92) (emphasis in original).

Rosado-Rodriguez does not overcome the presumption of correctness that his attorneys' evidentiary hearing testimony was credible.  This testimony reflects that counsel proceeded in accordance with Rosado-Rodriguez's decision not to pursue DNA testing upon conferring with Goforth.  Additionally, the record supports the state court's conclusion that not performing DNA testing was a reasonable strategic decision.  On cross-examination, lead Detective Joseph Testa conceded that the knife was not tested, and that he did not know if blood was present on the knife.  (Doc. 14, Ex. 1c, pp. 362-63.)  Crime scene investigator Jacob Becker testified on cross-examination that he was not given an order to test the knife, and that no testing was performed on the handcuffs.  (Id., p. 379.)  In closing argument, counsel asserted that the State's evidence was insufficient to show the knife was used in the incident, and pointed out that the State failed to test the knife.

(Id., p. 424-26.) Counsel elicited this testimony and presented this argument without risking unfavorable test results.

Furthermore, test results indicating that the knife did not cause the injury to Bailey would not necessarily result in an acquittal.  The state court's order provides that even if the cut was caused by the handcuff, whether that object constituted a deadly weapon would be a matter for the jury's determination under Florida law.  To the extent the state court's decision on Rosado-Rodriguez's ineffective assistance of counsel claim rests on an interpretation of Florida law, it must be afforded deference.  *See Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Rosado-Rodriguez has not established that counsel performed deficiently.[7]  He does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts when it denied this claim.  Accordingly, Ground One, Subclaim B warrants no

---

[7] In his habeas petition, Rosado-Rodriguez argues that counsel was ineffective for not utilizing an expert to testify "that it was more likely than not, the handcuff that was attached to one of the Petitioner's wrists that cut the alleged victim and not any knife." (Doc. 1, p. 6.)  Because Rosado-Rodriguez did not present this claim to the state court in his postconviction motion, it is unexhausted.  (Doc. 14, Ex. 6, pp. 52-56.)  Rosado-Rodriguez cannot return to state court to file a successive postconviction motion.  *See* Fla. R. Crim. P. 3.850(h).  Accordingly, the claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Rosado-Rodriguez does not establish the applicability of an exception to overcome the default.  *See id.*  Notwithstanding the default, his speculative argument cannot provide relief.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  Furthermore, as addressed, counsel made a reasonable strategic decision in not obtaining DNA testing of the knife.

relief.[8]

**Subclaim C**

Rosado-Rodriguez asserts that counsel was ineffective for failing to request a continuance to test the pipe found in his car for the presence of drugs.  The record reflects that on January 25, 2010, the day of jury selection, the State filed an amended information that added count ten, possession of drug paraphernalia. (Doc. 14, Ex. 1, pp. 27-34; Ex. 1a, p. 4.)  At the start of trial, counsel presented an oral motion in limine on several matters. When the State indicated that it would elicit testimony that Rosado-Rodriguez intended to steal video games to pawn for drugs, counsel responded that the pipe had not been tested and its use was therefore unknown.  (Doc. 14, Ex. 1b, pp. 105-06.)  The trial court told counsel to make objections during the course of trial.  (Id., p. 106.)

Accordingly, counsel later argued to the court that any reference to statements about Rosado-Rodriguez's intent to steal video games to buy drugs, or to his drug addiction, should be excluded.  (Doc. 14, Ex. 1c, pp. 287-89).  The court ruled that evidence Rosado-Rodriguez committed the robbery to buy drugs was relevant and admissible.  (Id., p. 290.) Detective Testa, to whom Rosado-Rodriguez made a statement, testified that he admitted his intent to steal DVDs and video games in order to purchase drugs.  (Id., p. 346.)

Counsel unsuccessfully objected to Deputy Porter referring to the pipe as a "crack cocaine pipe" in his testimony.  (Id., p. 319.)  Additionally, during the motion for judgment of acquittal on the count of possession of drug paraphernalia, counsel argued that the pipe

---

[8] In his reply, Rosado-Rodriguez argues that "the greatest charge that Petitioner could be convicted of is resisting a merchant," thereby "implicating an actual and factual innocence claim."  (Doc. 15, p. 3.)  He is prohibited from bringing this new claim in his reply.  *Herring*, 397 F.3d at 1342.

had purposes other than drug use, and was never tested for drugs.  (Id., p. 385.)

At the postconviction evidentiary hearing, Rosado-Rodriguez testified that he asked his attorneys to seek a continuance to test the pipe, but that they failed to do so.  (Doc. 14, Ex. 6, p. 138.)  Neither attorney recalled Rosado-Rodriguez asking for a continuance. (Id., pp. 155-57, 166-67.)  Goforth testified that he believed the defense would have "looked into it or continued it again" had Rosado-Rodriguez raised this issue.  (Id., p. 168.)  Both attorneys recalled the defense's argument to the court.  (Id., pp. 156, 167.)

The state court's order rejecting this claim addressed the evidentiary hearing testimony, as well as counsels' motion for judgment of acquittal.  The state court found:

> The Court notes a decision to move for a continuance is a decision typically left to the discretion of counsel.  "Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."  *Occhicone v. State*, 768 So.2d 1037, 1048 (Fla. 2000).  Thus, the Court cannot find counsel deficient in his decision to respond to the drug paraphernalia charge by arguing a motion in limine as opposed to a motion for continuance.
> . . .
>
> The Court finds because counsel argued the crack pipe was not tested to the Court on a motion for judgment of acquittal Defendant was not prejudiced by counsel's failure to file a motion for continuance.
> The Court finds Goforth and Sanchez' testimony at the evidentiary hearing to be credible.  The Court finds counsel[s'] decision to argue a motion in limine instead of a motion for continuance to be a reasonable tactical decision the Court will not second guess. *See Occhicone*, 768 So.2d at 1048.  The Court further finds Defendant cannot demonstrate prejudice from counsel's failure to move for a continuance because of counsel's arguments concerning the pipe in a motion in limine and motion for judgment of acquittal.  **For the foregoing reasons, the Court finds no relief is warranted on claim three.**

(Doc. 14, Ex. 6, pp. 93-95) (court's record citations omitted) (emphasis in original).

Rosado-Rodriguez does not establish that his attorneys performed deficiently in not

seeking a continuance to test the pipe.   As both attorneys testified, the defense addressed matters relevant to the charge of possession of drug paraphernalia by making argument to the court.   Counsel additionally elicited testimony during Porter's cross-examination in which Deputy Porter admitted that he did not test the pipe for any drug residue because Rosado-Rodriguez was not charged with drug paraphernalia at the time.  (Doc. 14, Ex. 1c, pp. 330-31.)  Furthermore, in the motion for judgment of acquittal counsel challenged the State's evidence by asserting that law enforcement failed to test the item.   To the extent Rosado-Rodriguez asserts that evidence regarding the pipe led the jury to believe that obtaining goods to exchange for drugs was a motive for the offenses, as addressed, counsel challenged the introduction of testimony on this matter.   Counsel took these measures without the risk of generating test results unfavorable to Rosado-Rodriguez. Therefore, there is support in the record for the state court's conclusion that counsels' approach was a reasonable tactical decision.

Rosado-Rodriguez fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim.  He is not entitled to relief on Ground One, Subclaim C.

**Subclaim F**

Rosado-Rodriguez claims that counsel was ineffective for advising him to reject the State's plea offer for a sentence of 15 years in prison.  He claims that, had counsel advised him of the strength of the State's case, he would have accepted this plea offer.

Rosado-Rodriguez does not show entitlement to relief.[9]  At the evidentiary hearing, he testified that he did not accept the State's plea offer because counsel told him he had a good defense due to the investigator's information that the video game was kept in a locked area.  (Doc. 14, Ex. 6, p. 143.)[10]  Rosado-Rodriguez further testified that Sanchez told him he would win at trial.  (Id., pp. 149-50.)

In their evidentiary hearing testimony, both attorneys denied advising Rosado-Rodriguez he should definitely reject the plea.  (Id., pp. 157, 169.) They denied telling him he would definitely win at trial because of evidence showing that the video game was in a locked case at Walmart.  (Id.) The attorneys testified it was Rosado-Rodriguez's own decision to reject the offer, and Goforth noted that Rosado-Rodriguez wanted an offer for five years.  (Id., pp. 158, 168.)  Sanchez testified that he informed Rosado-Rodriguez of the strengths and weaknesses of the case and believed they discussed the investigator's anticipated testimony.  (Id., pp. 157-58.)  Goforth testified:

> Q  At any point do you recall ever telling Mr. Rosado-Rodriguez that he must or should reject the State's offer?
>
> A  Oh, absolutely not.  This case had three loss prevention officers. This case was the Grand Theft Auto video game being played out in real life.  It was horrible facts.  There's video evidence.  It was a case that you don't want to try if you can avoid it because it's not witnesses that have any beef with your client with motivation or bias issues; it's loss

---

[9] Respondent asserts that Ground One, Subclaim F is unexhausted because Rosado-Rodriguez did not present the claim of ineffective assistance of counsel on collateral appeal.  The Court notes that on appeal, Rosado-Rodriguez argued that the court erred in basing its decision on a pre-trial evidentiary hearing and counsels' postconviction evidentiary hearing testimony.  (Doc. 14, Ex. 7, pp. 17-18.) However, given his overall argument that the postconviction court erred in denying his claim, the Court will analyze the claim as if it has been exhausted.

[10] Investigator John Angelo testified at trial that he went to Walmart and observed the Grand Theft Auto video game stored in a locked case.  (Doc. 14, Ex. 1c, pp. 395-97.)  However, his testimony reflects that he made this observation approximately five months after the offenses, and did not have personal knowledge of the game's location at the time of the offenses.  (Id., p. 398.)

prevention officers and law enforcement officers, which typically doesn't go well for the defense when it comes down to credibility issues, especially when you have a video of - - during the daylight hours, and then they arrest him in the car that they chased, and found the knife, and found video, and found the cut on his arm.  So it's definitely not the case to where we were telling him, yes, you're going to win this at trial.

(Id., pp. 168-69.)  Goforth further testified that Rosado-Rodriguez did not state he wanted

to take a fifteen-year plea offer.  (Id., p. 169.)

The state court denied Rosado-Rodriguez's ineffective assistance of counsel claim.

After addressing the claim and the evidentiary hearing testimony, the state court concluded:

A review of the transcript of Defendant's January 20, 2010, pretrial conference reflects Sanchez and the Assistant State Attorney informed the Court of the State's plea offer, Defendant's decision to reject the offer, and the maximum penalties Defendant was facing by proceeding to trial.  The trial court judge inquired of Defendant if he understood the State's offer and was rejecting the offer to which Defendant responded yes.

When an ineffective assistance claim is based on rejection of a plea offer, the defendant must prove the following: "(1) counsel failed to communicate a plea offer or misinformed defendant concerning the penalty faced, (2) defendant would have accepted the plea offer but for the inadequate notice, and (3) acceptance of the State's plea offer would have resulted in a lesser sentence.["] *Rudolph v. State*, 851 So.2d 839, 841 (Fla. 2d DCA 2003) (quoting *Cottle v. State*, 733 So.2d 963, 965 (Fla. 1999)).

The Court finds Defendant failed to prove the required *Cottle* elements as the record establishes counsel communicated the plea offer and the maximum penalties Defendant was facing, and therefore Defendant has not demonstrated counsel was deficient.  Further, the Court finds Goforth and Sanchez's testimony at the evidentiary hearing to be credible.  The Court finds counsel was not deficient as counsel did not advise Defendant to not accept the plea offer.  **For the foregoing reasons, the Court finds no relief is warranted on claim six.**

(Doc. 14, Ex 6, pp. 98-99) (court's record citations omitted)(emphasis in original).

Rosado-Rodriguez does not show entitlement to relief on this claim.  He does not

overcome the presumption of correctness afforded to the state court's finding that the

testimony of both attorneys was credible.  Accordingly, he does not establish deficient

performance by counsel because he fails to show that his attorneys advised him to reject the State's offer for a plea agreement. Rosado-Rodriguez fails to show that the state court's decision was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts.[11] He is not entitled to relief on Ground One, Subclaim F.

**Procedural Default Of Subclaims D And E**

In his postconviction motion, Rosado-Rodriguez raised the claims of ineffective assistance of counsel presented in Ground One, Subclaims D and E, but did not appeal their denial. (Doc. 14, Ex. 6, pp. 63-73; Ex. 7.) Florida Rule of Appellate Procedure 9.141(b)(3) governs collateral proceedings when a motion has been granted or denied after an evidentiary hearing was held on one or more claims. In *Cunningham v. State*, 131 So.3d 793 (Fla. 2d DCA 2012), addressing the application of this Rule, "Florida's Second District Court of Appeal clarified that [between December 2000 and September 2010], where the state post-conviction court had summarily denied some grounds, but denied others after an evidentiary hearing, the Second District would consider the merits, without briefing, of *all* grounds that the state post-conviction court had summarily denied." *Bucklon v. Sec'y, Dep't of Corr.*, 606 Fed. App'x 490, 492 (11th Cir. 2015) (emphasis in original).

However, the Second District Court of Appeal explained that it changed its policy

---

[11]In his memorandum of law and his reply, Rosado-Rodriguez challenges the state court's decision on the basis that the United States Supreme Court cases *Missoun v. Frye*, __U.S.__, 132 S.Ct. 1399 (2012) and *Lafler v. Cooper*, __U.S.__, 132 S.Ct. 1376 (2012), as applied by the Florida Supreme Court *Alcorn v. State*, 121 So.3d 419 (Fla. 2013), altered the analysis of claims that a defendant rejected a plea offer based on counsel's misadvice. *Alcorn* "recede[d] from the *prejudice* test set forth in [state decisions] as contrary to the four-prong test set forth in *Frye* and *Lafler*." 121 So.3d at 430 (emphasis added). Here, the state court determined that Rosado-Rodriguez was not entitled to relief because he did not establish *Strickland*'s deficient performance prong. Rosado-Rodriguez fails to show that the state court unreasonably applied *Strickland* in deciding his claim.

such that as of October 2010 "[i]f any ground is resolved after an evidentiary hearing, we require the appellant to process the appeal under rule 9.141(b)(3)." *Cunningham*, 131 So.3d at 795.   Therefore, the court explained, it "no longer conducts an independent review" of summarily denied claims that were not briefed on appeal if any claim was resolved after an evidentiary hearing. *Id.* Because Rosado-Rodriguez's collateral appeal was initiated in 2013, the Second District Court of Appeal treated it under the procedures in *Cunningham*.   Rosado-Rodriguez cannot return to state court to file a successive, untimely collateral appeal. *See* Fla. R. App. P. 9.141.   Therefore, Subclaims D and E to Ground One are procedurally defaulted. *See Smith*, 256 F.3d at 1138.   Rosado-Rodriguez does not establish that an exception applies to overcome the default.   *See id.* Notwithstanding the default, these claims are without merit.

**Subclaim D**

Rosado-Rodriguez argues that counsel was ineffective for not objecting to an ambiguous jury instruction defining the terms "deadly weapon" and "weapon."   The state court summarily rejected this claim:

> In claim four of his Motion, Defendant alleges counsel was ineffective for failing to object to the ambiguous jury instructions concerning a weapon. Defendant alleges counsel failed to object to the ambiguous definition of what constitutes a deadly weapon as opposed to a weapon, the difference of which determines whether or not the defendant could be found guilty of a life felony or a first degree felony.   Defendant alleges the jury was given the following definitions:
>
> > A weapon is a "deadly weapon" if it is used or threatened to be used in a way likely to produce death or great bodily harm. A "weapon" is legally defined to mean any object that could be used to cause death or inflict serious bodily injury.
>
> Defendant alleges what constitutes a weapon is for the jury to decide. Defendant alleges at trial the State argued the weapon used was a

knife. Defendant alleges his counsel argued the cut on the victim's hand was caused by the handcuffs placed on Defendant during the struggle. Defendant alleges the two definitions of weapons are virtually the same, ambiguous, and thus difficult for a jury to distinguish between the two. Defendant alleges counsel should have objected to the definitions of weapons read and requested the court give the definition of "dangerous weapon." Defendant alleges the weapon used was contested at trial, in that the defense argued there was no knife, the victims saw handcuffs and thought it was a knife, the store video footage failed to show a knife, and the knife found in the Defendant's vehicle was never tested for DNA.

Defendant alleges he was prejudiced because the type of weapon used was a disputed element at trial and had counsel objected to the definitions in the jury instructions counsel could have argued to the Court that because the definitions are so much alike they reduce the burden of the State. Defendant alleges because the definitions reduce the State's burden "the jury is going to return a verdict for the higher offense as instructed by the court."

The Court finds claim four to be facially sufficient. However, the Court finds the instructions given by the Court for the definitions of weapon and deadly weapon were standard jury instructions. *See* Florida Standard Jury Instructions in Criminal Cases, 15.1. Failure to object to a standard jury instruction is not ineffective assistance of counsel. *See Elledge v. State*, 911 So.2d 57, 77 (Fla. 2005): *Thompson v. State*, 759 So.2d 650, 655 (Fla. 2000) (holding that it was not deficient for counsel to fail to object to a standard instruction that had not been invalidated by the Florida Supreme Court). Thus counsel cannot be deemed deficient for not objecting to standard jury instructions. As such, the Court finds Defendant cannot establish deficient performance as required by *Strickland*. *See Strickland*, 466 U.S. at 686. **Therefore, the Court finds that Defendant is not entitled to relief on claim four.**

(Doc. 14, Ex. 6, pp. 12-13) (emphasis in original).

To show that counsel was ineffective for not objecting to a jury instruction, Rosado-Rodriguez must show that the instruction was improper, a reasonably competent attorney would have objected to the instruction, and the failure to object prejudiced him. *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir. 1988). Rosado-Rodriguez does not meet this standard. The state postconviction court concluded that the instruction given was consistent with Florida's standard jury instructions. "[A] state court's interpretation of state

law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Rosado-Rodriguez does not establish that the instruction was incorrect under state law or that a reasonably competent attorney would have lodged an objection to it. Rosado-Rodriguez also fails to establish a reasonable probability that the outcome of the proceeding would have been different had counsel objected to the jury instruction defining the terms "weapon" and "deadly weapon."   Accordingly, he has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this claim.  Rosado-Rodriguez is not entitled to relief on Ground One, Subclaim D.

## Subclaim E

Rosado-Rodriguez claims that counsel was ineffective for not requesting a special jury instruction on his theory of defense.  He asserts that he did not have a knife and that the only object that could have caused Bailey's injury was the pair of handcuffs placed around one of his wrists.  Rosado-Rodriguez claims that counsel "should have requested that the court instruct the jury on what a weapon is and what is not." (Doc. 1, p. 8.)  He claims that, as a result of counsels' performance, he was denied a fair trial and due process.  The state court summarily rejected this claim when Rosado-Rodriguez raised it in his postconviction motion:

> In claim five of his Motion Defendant alleges counsel was ineffective for failing to request special jury instructions on his theory of defense. Defendant alleges his defense to the robbery as argued at trial and in closing arguments by counsel, was that the object in Defendant's hand during the robbery causing the injury to the victim was not a knife, but a handcuff. Defendant alleges when the jury was instructed on weapon the Court referred to it as an object.  Defendant alleges the jury could have concluded whether it was a knife or handcuff, they were both an object, and thus both a weapon and returned a guilty verdict.  Defendant alleges counsel should have objected to a more specific definition other than weapon or object and that counsel should have requested a special jury instruction predicated on

his defense with the handcuffs. Defendant alleges counsel should have requested the court instruct the jury: "if you find that he object used in this case was a handcuff, you must find the defendant not guilty." Defendant alleges the evidence supports the special instruction and that the standard jury instruction does not adequately cover Defendant's defense given the facts of the case.

Defendant alleges he was prejudiced because had the jury determined the object used was a handcuff the Court's instruction as given left the jury with no choice but to find Defendant guilty of robbery with a weapon. Defendant alleges there is reasonable doubt that the object used was a knife. Defendant alleges had the jury been given the special instruction Defendant would not have been found guilty of robbery with a deadly weapon.

The Court finds claim five to be facially sufficient. However, the Court finds the instruction Defendant alleges his counsel should have requested does not comply with law. The Court notes Defendant was charged with aggravated battery with a deadly weapon, aggravated assault with a deadly weapon, and robbery with a deadly weapon. The Court notes the verdict form reflects Defendant's crimes as charged as well as the lesser offenses options. The Court notes the jury was instructed on the standard jury instructions for the definitions of weapon and deadly weapon. The Court further notes the jury determines what constitutes a weapon. *See Dale v. State*, 703 So.2d 1045 (Fla. 1997). As such, it was for the jury to determine whether the object Defendant carried was a weapon and it was for the jury to determine whether it would find Defendant guilty or not guilty. The Court finds that if a jury found the object carried was a handcuff, such a finding does not automatically result in a not guilty verdict, as such a determination is for the jury to make. The Court finds Defendant's requested instruction is a misstatement of the law and as such counsel cannot be deemed deficient for not objecting and failing to request such an instruction. As such, the Court finds Defendant cannot establish deficient performance as required by *Strickland. See Strickland*, 466 U.S. at 686; *see also Willacy v. State*, 967 So.2d 131, 140 (Fla. 2007) (explaining that "counsel is not ineffective for failing to make a futile objection"). **Therefore, the Court finds that Defendant is not entitled to relief on claim five.**

(Doc. 14, Ex. 6, pp 13-15) (emphasis in original).

Rosado-Rodriguez has not shown entitlement to relief on this claim. The state court found counsel could not be ineffective for failing to present Rosado-Rodriguez's proposed instruction to the court because it was an inaccurate statement of Florida law. Furthermore, the state court found that even if the handcuffs caused the cut, the jury still

would have been required to determine whether the handcuffs constituted a deadly weapon in accordance with Florida law.  As this claim of ineffective assistance of counsel depends upon an interpretation and application of state law, deference must be given to the state court's decision.   *See Will*, 278 Fed. App'x at 908.   Rosado-Rodriguez does not demonstrate that counsel performed deficiently or that he suffered resulting prejudice.[12]

Rosado-Rodriguez fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim.  Rosado-Rodriguez is not entitled to relief on Ground One, Subclaim E.

## Ground Two

In Ground Two, Rosado-Rodriguez presents four subclaims asserting trial court error.  He contends that these alleged errors violated his "Federal Constitutional rights to equal application of the law and due process."  (Doc. 1, p. 10.)

## Procedural Default Of Subclaims A, C, And D

In Subclaim A, Rosado-Rodriguez asserts that the trial court erred in overruling his objection to the introduction of irrelevant evidence that he intended to buy drugs.  In Subclaim C, Rosado-Rodriguez argues that the trial court erred in permitting Porter to testify to improper hearsay statements that Walmart employees told him the video game found in the car belonged to Walmart.  In Subclaim D, Rosado-Rodriguez contends that the trial court erred in permitting Bailey to give lay opinion testimony that the cut on his hand was consistent with having been made by a knife.

---

[12] Additionally, Rosado-Rodriguez fails to show that he was not able to present his defense to the jury. Counsel asserted in closing argument that the State's evidence did not exclude the possibility that Bailey's injury was caused by the handcuff.  (Doc. 14, Ex. 1c, p. 424.)  Counsel further emphasized that there was insufficient evidence to show Rosado-Rodriguez had or used a knife, and that the State failed to test the knife. (Id., pp. 424-26.)

Rosado-Rodriguez did not raise any federal claim when he presented these arguments to the state appellate court on direct appeal. (Doc. 14, Ex. 2, pp. 8-12, 15-18.) Accordingly, he failed to exhaust the constitutional dimension of these claims in state court. State procedural rules do not provide for successive direct appeals. *See* Fla. R. App. P. 9.140. Therefore, these claims are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Rosado-Rodriguez does not establish that an exception applies to overcome the default. *See id.*[13]

Notwithstanding the default of the claims presented on direct appeal, Rosado-Rodriguez is not entitled to relief. "[G]enerally, federal courts 'are not empowered to correct erroneous evidence rulings of state trial courts.'" *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998) (quoting *Boykins v. Wainwright*, 737 F.2d 1539, 1543-44 (11th Cir. 1985)). *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("Nor do our habeas powers allow us to reverse [petitioner's] conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case.")

However, habeas relief may be warranted if an error rises to the level of a denial of fundamental fairness, implicating the petitioner's federal due process rights. *Snowden*, 135 F.3d at 737. A state court evidentiary ruling typically cannot rise to the level of a federal due process violation "unless 'it offends some principle of justice so rooted in the traditions

---

[13] In his memorandum, Rosado-Rodriguez appears to allege a Sixth Amendment violation in that the introduction of hearsay testimony violated *Crawford v. Washington*, 541 U.S. 36 (2004) and *Davis v. Washington*, 547 U.S. 813 (2006). Rosado-Rodriguez failed to present this claim on direct appeal. (Doc. 14, Ex. 2.) It is therefore unexhausted and procedurally defaulted for the same reasons addressed here. Because Rosado-Rodriguez does not show the applicability of an exception to overcome the default, this claim is barred from review.

and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518

U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)).  Rosado-

Rodriguez fails to demonstrate that the alleged evidentiary errors warrant federal habeas

relief.   He is not entitled to relief on Ground Two, Subclaims A, C, and D.

**Subclaim B**

Rosado-Rodriguez claims that the trial court erred in denying his motion for

judgment of acquittal for the count of robbery because the State's evidence was insufficient

to show that a taking occurred or to establish "the putting in fear element of robbery."  In

support, he claims that he denied taking any items in his statement to police, that no

Walmart employees testified any games were missing from the store, that no video games

were found on his person, and that the video game found in his car was not identified as

having been taken from Walmart.

Assuming that his federal claim was exhausted, he is not entitled to relief.[14]  The

record reflects that the defense moved for a judgment of acquittal on the count of robbery,

arguing that the State's evidence failed to show a taking.  (Doc. 14, Ex. 1c, pp. 381-83.)

Counsel alternatively argued that the use of force was "not the purpose of the taking.  The

use of force was with the intent to escape the Wal-Mart, to flee."  (Doc. 14, Ex. 1c, p. 383.)

---

[14] Rosado-Rodriguez presented his claims in terms of state law.  A habeas petitioner may be able to exhaust a federal claim challenging the sufficiency of the evidence by raising a state law claim the state standard of review for a sufficiency of the evidence claim is identical to the federal standard of review:

> Florida courts assess the sufficiency of the evidence used to convict criminal defendants under a legal standard identical to the one used by federal courts in deciding federal due process challenges to the sufficiency of the evidence ... In this case, the state court analyzed [petitioner]'s due process sufficiency of the evidence claim using a standard identical to the one required under federal law.  Under these circumstances, we conclude [petitioner]'s federal claim has been exhausted.

*Mulnix v. Sec'y, Dep't of Corr.*, 254 Fed. App'x 763, 764-65 (11th Cir. 2007).

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). The Supreme Court established the standard of review in a federal habeas corpus proceeding in which a petitioner challenges the sufficiency of the evidence:

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 – if the settled procedural prerequisites for the claim have otherwise been satisfied – the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990), the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson*, 443 U.S. at 326." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Id.* Accordingly, federal courts must defer to the judgment of the jury in assigning credibility to witnesses and weighing the evidence. *Id.*

Florida's robbery statute provides:

> (1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
> . . .

Page 32 of  34

(3)(b) An act shall be deemed "in the course of the taking" if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.

§ 812.13(1), (3)(b), Fla. Stat.

The State presented competent evidence that there was a taking, and that during the course of the taking, force, violence, assault, or putting in fear was used.  Garberg observed Rosado-Rodriguez put video games in the front of his pants and exit the store without paying for them.  A video game wrapped in packaging was found in his car.  The State presented testimony that a Walmart representative advised law enforcement that the video game was a Walmart item.  Additionally, evidence adduced at trial reflects that Rosado-Rodriguez engaged in a physical altercation with the Walmart employees as he attempted to leave the store, during which Rosado-Rodriguez had a knife and Bailey received a cut to his hand.  Rosado-Rodriguez fails to show that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  He does not demonstrate that the state court's decision was contrary to or an unreasonable application of controlling Supreme Court precedent, or was based on an unreasonable determination of the facts.  Ground Two, Subclaim B warrants no relief.

It is therefore

**ORDERED** that Rosado-Rodriguez's petition for writ of habeas corpus (Doc. 1) is **DENIED**.[15]  The Clerk is directed to enter judgment against Rosado-Rodriguez and to close

---

[15] Rosado-Rodriguez seeks an evidentiary hearing.  An evidentiary hearing is not warranted.  An evidentiary hearing is not warranted.  *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore  a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record."); *Henry v. Warden, Ga. Diagnostic Prison*, 750 F.3d 1226, 1232 (11th Cir. 2014) ("Henry is not entitled to an

this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is further **ORDERED** that Rosado-Rodriguez is not entitled to a certificate of appealability (COA).   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA.   *Id.*   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   *Id.* at § 2253(c)(2).   To make such a showing, Rosado-Rodriguez "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).   Rosado-Rodriguez has not made the requisite showing in these circumstances.   Finally, because Rosado-Rodriguez is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on April 4, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Andro Rosado-Rodriguez; Counsel of Record

---

evidentiary hearing on the merits of his claim of juror misconduct because he procedurally defaulted that claim.").